IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| SHAWN WHITENIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-cv-01864 |
| | ) | |
| vs. | ) | |
| | ) | Chief United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| JOHN WETZEL, PA DOC SECRETARY; JOHN/JANE DOE, CORRECT CARE SOLUTIONS; ROBERT GILMORE, SCI GREENE SUPERINTENDENT; DEPUTY DIALESANDRO, SCI GREENE DEPUTY SECRETARY; DORINA VARNER, CHIEF GRIEVANCE OFFICER; KERI MOORE, PA. DEPT. OF CORRECTIONS; PAUL NOEL, ACTING MEDICAL DIRECTOR, PA. DEPT. OF CORRECTIONS; ANDREA NORRIS, ACTIVE DIRECTOR OF BUREAU OF HEALTH CARE SERVICES; TRACY SHAWLEY, GRIEVANCE COORDINATOR; IRMA VIHIDAL, CHCA; KYLE GUTH, CHCA; R. CLITES, MEDICAL; MICHAEL BELL, PA. DEPT. OF CORRECTIONS; MICHAEL ZAKEN, PA. DEPT. OF CORRECTIONS; DR. HERBIK, REGIONAL MANAGER OF CORRECT CARE SOLUTIONS; DR. BYUNGHAK JIN, MEDICAL DIRECTGOR SCI GREENE; DR. ALPERT, MEDICAL DIRECTGOR SCI GREENE; DR. RAJ MAHLI, MEDICAL DIRECTOR SCI GREENE; DR. MIN HI PARK, PHYSICIAN SCI GREENE; DR. SANTOS, PHYSICIAN SCI GREENE; DR. KRAK, DENTIST SCI GREENE; JOHN KUSHNER, PHYSICAL THERAPIST; ESTHER MATTES, PHYSICIANS ASSISTANT; ELAN MWAURA, PHYSICAL ASSISTANT; JOHN MCANANY, R.N.SUPERVISOR; NEDRA GREGO, RN SUPERVISOR; NURSE JONES, JOHN/JANE DOE, PA. DEPT. OF CORRECTIONS; JOHN/JANE DOE, CORRECT CARE SOLUTIONS; PENNSYLVANIA DEPARTMENT OF | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1

| CORRECTIONS, CORRECT CARE SOLUTIONS, JOHN/JANE DOE, BUREAU OF HEALTHCARE SERVICES; | ) ) ) ) |
|---|---|
| Defendants. | ) ) ) |

# MEMORANDUM OPINION[1]

Plaintiff, Shawn Whitenight, brings this civil rights case against a 28 named defendants and a number of Jane/John Doe Defendants claiming his civil rights were violated during his incarceration at SCI-Greene.[2] In response to Defendants' motions to dismiss, Whitenight filed an Amended Complaint, which remains the operative pleading. (ECF No. 110). The defendants are the Pennsylvania Department of Corrections ("DOC"), and individuals and entities employed by the DOC, including the Secretary of the DOC, the Superintendent, grievance coordinators, physicians and medical staff, a physical therapist, the Director of the Bureau of Healthcare Services, and several unnamed individuals. Whitenight asserts that he was denied adequate medical treatment in violation of the Eighth Amendment to the United States Constitution, that he was retaliated against for speaking out about his inadequate medical treatment in violation of the First Amendment, and that his Due Process rights were violated when he was placed in administrative custody for 33 days in violation of the Fourteenth Amendment. He also brings

---

[1] In accordance with the provisions of 29 U.S.C. § 636(c)(1), all served parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 57, 101, 104, 113, 168, 170, and 185. The only parties who have not been served are John / Jane Doe defendants. While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this Court is not aware of any decision holding that consent is necessary from defendants who are both unserved and unidentified.

[2] At the time Whitenight filed this complaint, he was a Pennsylvania state prisoner housed at SCI-Greene. He notified the Court October 24, 2017, that he had been released from DOC custody. (ECF No. 180).

multiple state law claims sounding in medical malpractice, intentional infliction of emotional distress, negligent infliction of emotional distress, and corporate negligence.

The Defendants have filed motions to dismiss contending that Whitenight's constitutional claims are without merit because the facts set forth in his Amended Complaint affirmatively reveal that he did receive adequate medical care and that the Amended Complaint does not sufficiently allege a claim for First Amendment retaliation or a due process violation. *See* ECF Nos. 133, 139, 153, and 180.[3] Whitenight has responded in opposition to each motion. (ECF Nos. 145, 146, 147, 148, 149, 165, 166, 167, 190, 191, and 192). Defendants Santos and Kushner filed Reply Briefs (ECF Nos. 179 and 194, respectively), to which Whitenight filed a Sur-Replies. (ECF No. 186 and 195). The motions are fully briefed and ripe for disposition. For the reasons that follow, the motions will be granted to the extent that all federal claims will be dismissed with prejudice and any state law claims will be dismissed without prejudice for want of jurisdiction.

## Background[4]

At the outset, the Court notes that the Amended Complaint contains over 360 paragraphs and is a running narrative of the medical care, or lack thereof, that Whitenight received during an approximately 18-month period at SCI-Greene. The Amended Complaint incorporates and references over 300+ pages of exhibits which Whitenight filed with his original complaint. Consistent with the Court of Appeals' directive in *Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019), the Court has carefully examined the allegations of the Amended Complaint.

---

[3] The motion to dismiss filed by Defendant Kuschner (ECF No. 180) has been construed as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). See Text Order of 12/6/2017 (ECF No. 182).

[4] The background of this case is taken from the allegations in the Amended Complaint, which this Court must accept as true when considering the instant motions to dismiss.

Plaintiff was arrested on December 17, 2013, and he claims that during his arrest he was a "victim of excessive force retaliation" by the arresting Pennsylvania State Troopers. Amended Complaint, ¶38. He claims that this alleged "excessive force" caused injuries to his cervical and lumbar spine. *Id.* He does not claim that any of the named Defendants, who saw him when he was at SCI-Greene, caused his injuries. In his summary and "index" of claims, Whitenight stresses that the claims of his Amended Complaint are about "denials and delays to provide the correct, adequate medical care." (ECF 115, p. 1 and ECF 110, ¶41).

**Standard of Review**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. A court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id*. (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established. In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an

4

entitlement to relief. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

## Discussion

A. <u>The Amended Complaint Fails to State a Claim For Deliberate Indifference in Violation of the Eighth Amendment.</u>

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and requires that prisoners receive access to basic medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Whitenight faces an exacting burden in advancing his Eighth Amendment claim against prison officials in their individual capacities.[5] To sustain such a claim, he must plead facts that:

> [M]eet two requirements: (1) "the deprivation alleged must be objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable

---

[5] Any claims against the DOC and the DOC Defendants in their official capacities are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 1159-165-67 (1985).

5

> state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations marks and citations omitted). In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when officials are deliberately indifferent to an inmate's serious medical needs. *Estelle*, 429 U.S. at 105. To establish a violation of a constitutional right to adequate medical care in accordance with this standard, a prisoner is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered

6

to the inmate. Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights').

1. *Claims Against the DOC Defendants Relating to Whitenight's Back Pain*

Plaintiff generally accuses the DOC Defendants of not agreeing with him when he complained about his medical care and/or not overriding the medical and clinical judgment of his doctors. In fact, most of the claims against the DOC defendants concern their failure to respond "appropriately" to letters, requests, or grievances where Whitenight complained about the scope, timing, and medical judgment of his doctors, and/or the medical staff's handling of medical records or consultations. *See* Amended Complaint, Counts 1, 3-9, 11, 52-55, 66-67, 69-70, 73, 77-83, 86-87. (ECF No. 110).

The DOC Defendants argue that Whitenight has failed to state a claim against them as they did not have personal involvement in the treatment or alleged delay of Whitenight's medical treatment. The Court agrees with the DOC Defendants and finds that Whitenight's allegations against them cannot support an Eighth Amendment claim for deliberate indifference as a matter of law.

First, the DOC Defendants are non-medical prison officials. As the Court of Appeals for the Third Circuit recently reiterated:

> As our precedent makes clear, "a non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have a "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236; see also *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that non-physicians cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017). Here, Whitenight was being treated by medical professionals and there is no allegation that any of these DOC Defendants knew or had any reason to believe that the medical professionals were mistreating Whitenight or denying or delaying medical treatment for non-medical reasons. The DOC defendants are entitled to defer to the medical professionals under these circumstances, particularly when it comes to decisions about medications, consultations for surgery, and interpreting diagnostic tests. *See Davis v. Collins,* 230 F. App'x 172, 174 (3d Cir. 2007); *Roberts v. PA DOC*, No. 1:cv-15-2456, 2016 WL 4379031, *3 (M.D. Pa. Aug 17, 2016); *Lawson v. Phila. Prison System*, No. 10-17712011 WL 710489, *3 (E.D. Pa. Mar. 1, 2011).

Moreover, to establish personal liability against a defendant in a § 1983 action, the defendant must have personal involvement in the alleged wrongs. That is, the state actor must have played an affirmative part in the alleged misconduct in order to be subject to liability. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Chavarriaga v. New Jersey Dep't of Corrections*, 806 F.3d 210, 222 (3d Cir. 2015); *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Responding to a grievance is not sufficient to show the actual knowledge necessary for personal involvement. *Rode*, 845 F.2d at 1208. Likewise, "supervising and monitoring" the delivery of medical services is not sufficient to show the actual knowledge necessary for personal involvement.

And as for Defendants Wetzel and Gilmore, there are "two general ways" in which a supervisor-defendant may be liable: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The United States Court of Appeals for the Third Circuit explained these two general types of supervisory liability as follows:

> First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372

> F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190–91 (3d Cir. 1995) ). "Failure to" claims—failure to train, failure to discipline, or, as in the case here, failure to supervise—are generally considered a subcategory of policy or practice liability.

*Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes,* -- U.S. --, 135 S.Ct. 2042, 2043 (2015).

The Amended Complaint is void of any allegations that Secretary Wetzel or Superintendent Gilmore "established and maintained a policy, practice, or custom" which resulted in Whitenight's constitutional rights being violated or that they directly participated in violating Whitenight's rights, directed others to violate them, or, "as the person in charge, had knowledge of and acquiesced" in any of the conduct which resulted in Whitenight's constitutional rights allegedly being violated.

After careful review of the Amended Complaint, and the exhibits thereto, the Court finds that the Amended Complaint fails as a matter of law to state a claim because it does not allege any facts to suggest that the DOC defendants had personal involvement in the providing of medical care to Whitenight and the alleged violations of his rights under the Eighth Amendment.

2.  *Claims against the Medical Defendants and Dr. Santos*

Whitenight was diagnosed with chronic degenerative changes in his cervical and lumbar spine. He contends that his back pain required surgical intervention, and that the course of treatment prescribed by the Medical Defendants and Dr. Santos - prescribing pain medication and physical therapy - was inadequate and amounted to deliberate indifference to his medical needs. The Court finds that Whitenight's claims fail as a matter as law because he cannot establish that these defendants were deliberately indifferent to his serious medical needs. At most, Whitenight's claims

9

amount to a disagreement with the course of treatment that the medical staff at SCI-Greene prescribed. A fair reading of the Amended Complaint, coupled with the documents attached thereto, indicates Whitenight was adamant that his pain required surgical intervention. However, these same documents reveal that the medical professionals who were treating him did not think that surgical intervention was an appropriate course of treatment.

It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990). See *Foye v. Wexford Health Sources, Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (medical defendants were not deliberately indifferent for failing to order an MRI consult at the inmate's request); *Gause v. Diguglielmo*, 339 F. App'x 132, 135-36 (3d Cir. 2009) (prison medical staff were not deliberately indifferent where inmate received medicine, physical therapy, and outside treatment, and where the inmate disagreed over the type of pain medication he received). In the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment has been disavowed by courts since such determinations remain a question of sound professional medical judgment. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Additionally, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." *Id*. at 762.

The medical evidence presented by Whitenight shows that the Medical Defendants and Dr. Santos provided extensive and significant care and prescribed a course of treatment to help treat his back pain, including pain medications and physical therapy, and that Whitenight disagreed with that course of treatment. The Amended Complaint contains no plausible allegations that the Medical Defendants or Santos refused to provide Whitenight with medical care or that they delayed his treatment for non-medical reasons. *Durmer*, 991 F.2d at 68. Rather, the exhibits to the

10

Amended Complaint consistently reflect that Whitenight's medical providers did not believe that surgery was the proper treatment for his degenerative disc problems. Whitenight's requests for an MRI,[6] additional pain medications, and surgery do not outweigh his treating physicians' professional judgment in determining the proper course of treatment, especially when a significant level of medical care was provided to him. *Brown*, 903 F.2d at 278. Thus, the Court finds that the factual allegations of the Amended Complaint, along with the attached Exhibits, do not show that Whitenight has a plausible claim for relief. *Iqbal*, 566 U.S. at 678. Whitenight has failed to present any allegations which demonstrate that any of the Medical Defendants or Dr. Santos was deliberately indifferent to his medical needs.

For all these reasons, the Court finds that Whitenight has failed to state a claim for which relief can be granted as a matter of law against any of the Medical Defendants and Dr. Santos for the alleged violation of his Eighth Amendment rights.

3. *Claims Against Kushner, physical therapist*

According to the Amended Complaint, Whitenight began treating with Mr. John Kushner on March 29, 2016. Mr. Kushner recommended stretching / resistance exercises, but told Whitenight that these exercises would not "remove, repair or reduce the disc protruding into the spinal cord." Complaint at ¶ 178. He alleges that Mr. Kushner "failed to respond appropriately or at all to Plaintiff's serious medical needs, interfered, denied and failed to complete treatment once prescribed, conspired and completed informal policies or customs using the treatment known to be ineffective to deny the correct treatment and used as a scheme to reach the next treatment option and failing to complete consults (illegible) the next option." *Id*. at ¶ 232.

---

[6] Exhibit 10-52, at 9, to the Amended Complaint reflects that Whitenight eventually had an MRI on July 21, 2016, prior to initiating this lawsuit.

It appears that Plaintiff is alleging that physical therapy was not an appropriate treatment and would not cure his disc herniation and that some different treatment or diagnostic testing should have been provided. However, Mr. Kushner is a physical therapist, and cannot provide medical treatment or order medical consultation while a patient is under the care of a physician, which Whitenight was at all times. Whitenight's allegations reflect only his disagreement with the treatment provided, not that Mr. Kushner was deliberately indifferent to Whitenight's serious medical needs. Accordingly, the Court finds that Whitenight has failed to state a claim for which relief can be granted as a matter of law against John Kushner for the alleged violation of his Eighth Amendment rights.

4. *Claims Regarding Dental Care*

In Count 71, Whitenight sues Dentist Krak, Secretary Wetzel, Superintendent Gilmore and multiple other medical and non-medical defendants for failing to respond appropriately to his serious dental needs. Whitenight claims that during his bi-annual dental checkup in April 2016, a dental assistant advised him that he had three small cavities and there was a waiting list of 1-1/2 to 2 years to receive fillings. (ECF No. 110, ¶¶ 247-248). However, he also states that, after filing a grievance, he received his cavity filings two months later on June 22, 2016. (*Id*. at ¶ 250).

After careful review of the Amended Complaint, and the exhibits thereto, it is clear that Whitenight received proper dental care. Dr. Krak found Whitenight's teeth to be in very good condition and he had only 3 "small" cavities. (ECF 10-41, p.3). Although Whitenight was told the wait list for fillings was long, he was given a dental appointment two months later and his cavities were filled at that time. Accordingly, the Amended Complaint fails to state a claim of deliberate indifference claim concerning Whitenight's dental care against any of the defendants.

12

B. The Amended Complaint Fails to State a Claim For Retaliation in Violation of the First Amendment.

In Count 85 of the Amended Complaint, Whitenight asserts that Dr. Jin and RN John McAnany retaliated against him for his exercise of speech. During an exam on 4/8/16, Whitenight complained to Dr. Jin that his pain medications were not working. After an examination, Dr. Jin told Whitenight that his complaints were not consistent with the exam findings. Whitenight became argument and verbally inappropriate and, admittedly in a voice louder than usual, said, "This is Fucking Bullshit." (ECF No. 110, ¶ 288). He was then issued a misconduct and was taken to the RHU.

In order to state a *prima facie* claim of retaliation under the First Amendment, a prisoner-plaintiff must show: (1) he engaged in constitutionally protected activity; (2) he suffered an "adverse action" at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor between the exercise of his constitutional rights and the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2004). Fatal to Whitenight's claim is that the Amended Complaint states no facts which show that Whitenight engaged in constitutionally protected conduct.

Courts have consistently held that prisoners do not have a constitutionally protected right to use inappropriate, disrespectful, and derogatory language. *See, e.g., Torres v. Clark*, 522 F. App'x 103, 106 (3d Cir. 2013) (holding that abusive, obscene, or inappropriate language used by a prisoner in a letter "plainly violated the prison's permissible restriction on [the prisoner's] First Amendment rights and therefore cannot form the basis for a retaliation claim").

Whitenight cannot make out a *prima facie* case of retaliation as the statement he made to Dr. Jin and RN McAnany does not amount to constitutionally protected conduct triggering a retaliation claim. Therefore, this claim will be dismissed.

C. The Amended Complaint Fails to State a Claim For Due Process in Violation of the Fourteenth Amendment.

In Count 58 of the Amended Complaint, Whitenight claims Secretary Wetzel, Superintendent Gilmore, and Deputy Dialesandro violated his due process rights by placing him in administrative custody ("AC") for approximately 33 days upon his arrival at SCI-Greene on 11/20/14. Whitenight acknowledges that his placement in AC was due to a lack of general population bed space. Whitenight claims his placement in AC custody was an illegal action that was taken without affording him due process.

The protections of the Due Process Clause are triggered only if there is a deprivation of a protected interest in life, liberty, or property. *See Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2002). For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Whitenight was in placed in administrative custody for 33 days. This is not enough to trigger a protected property interest. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (holding seven months in disciplinary custody did not implicate liberty interest interest); *Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (holding disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate liberty interest; *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (holding administrative detention for fifteen months did not implicate liberty interest). Accordingly, the Court finds that Whitenight has failed to state a claim for which relief can be granted for the alleged violation of his due process rights and this claim will be dismissed with prejudice.

D.  The Amended Complaint Fails to State a Claim For Conspiracy Under 42 U.S.C. § 1983.

To prevail on a § 1983 conspiracy claim, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a constitutional right. *Laurensau v. Romarowics*, 528 F. App'x 136, 140 (3d Cir. 2013). A conspiracy claim that does not allege facts or is based on plaintiff's own suspicion or speculation is insufficient to state a claim for conspiracy. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991); *Tindell v. Beard*, 351 F. App'x 591, 594 (3d Cir. 2009) ("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a conspiracy claim." (quoting *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir. 1989)).

Whitenight's claim that Defendants' actions were a part of an overarching conspiracy can easily be rejected. The allegations of the Amended Complaint are nothing more than his own suspicion and speculation. The Amended Complaint and the voluminous attachments thereto reflect that Whitenight's constitutional rights were not violated. Accordingly, Whitenight's conspiracy claim will be dismissed.

E.  The Court Will Not Exercise Supplemental Jurisdiction Over State Law Claims

Whitenight's remaining claims allege various state law claims including, but not limited to negligence, medical malpractice, intentional infliction of emotional distress, negligent infliction of emotional distress, and corporate negligence.[7] A District Court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c). However, the Court of Appeals for the Third Circuit has recognized, "where the claim over which the district court has original

---

[7]  The Amended Complaint also lists, without explanation, such violations as, *inter alia*, "medical assault and battery," "negligence supervision of employees and agents," "the state tort claim of equal protection / discrimination," "civil conspiracy," "prosecution of retaliation against a witness," "official oppression," "reckless endangerment," and "violation of business entities."

15

jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995)) (emphasis in original).

Here, the Court has found that Whitenight's Amended Complaint fails to state viable constitutional claims. Considerations of judicial economy, convenience, and fairness do not provide an affirmative justification for maintaining Whitenight's state law claims. *Shaffer v. Bd. of Sch. Dir. of Albert Gallatin Area S.D.*, 730 F.2d 910, 912–13 (3d Cir. 1984) (noting that "time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction" and that "decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"). Because the Court will dismiss the federal claims, and there is no diversity, the Court will dismiss all state law claims without prejudice for want of jurisdiction. *See Burnsworth v. PC Lab.*, 364 F. App'x 772, 776 (3d Cir. 2010) (affirming a district court's decision to decline supplemental jurisdiction over state law claims when the federal claims had been dismissed); *Alexander v. New Jersey State Parole Bd.*, 160 F. App'x 249, 251 (3d Cir. 2005) (same).

**Leave to Amend**

The Court of Appeals for the Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Given that the Court has already provided

Whitenight with an opportunity to amend, further amendment of this pleading would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012).

## Conclusion

For all the above reasons, the pending motions to dismiss will be granted on all of Whitenight's federal claims and these claims will be dismissed with prejudice. The Court will not exercise supplemental jurisdiction over the state law claims and these claims will be dismissed without prejudice to refiling in an appropriate state forum. An appropriate order follows.

Dated: December 12, 2019

                                            BY THE COURT:

                                            s/Cynthia Reed Eddy
                                            Cynthia Reed Eddy
                                            Chief United States Magistrate Judge

cc:      SHAWN WHITENIGHT
           182 Evansville Road
           Berwick, PA 18603
           (via U.S. First Class Mail)

           All Counsel of Record
           (via ECF electronic notification)